UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL COOPER,
 *Plaintiff*,

v.

ROLLIN COOK *et al.*,
 *Defendants*.

No. 3:19-cv-01794 (JAM)

## INITIAL REVIEW ORDER
## AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

 Plaintiff Michael A. Cooper has filed a civil rights complaint under 42 U.S.C. § 1983 against numerous officials of the Connecticut Department of Correction ("DOC"). He principally alleges that he has suffered from severe dental and mental health problems and that the defendants were deliberately indifferent to his health and safety. He has also filed a motion for a preliminary injunction seeking to require the defendants to pay for his dental treatment.

 Based upon an initial review in accordance with 28 U.S.C. § 1915A, I will dismiss all of Cooper's claims except one claim for deliberate indifference against Dr. Bozzi, a DOC dentist. In light of Cooper's release from prison, I will deny his motion for preliminary injunction as moot.

### BACKGROUND

 The following facts as alleged in the complaint are assumed to be true solely for purposes of my initial evaluation of the complaint and my evaluation of Cooper's motion for a preliminary injunction. In October 2018, Cooper, who was then incarcerated in the Bridgeport Correctional Center ("BCC"), made an initial complaint to prison medical staff that he was suffering from "horrible dental pain." Doc. #1 at 7 (¶ 1). He was not seen until he had a seizure in November 2018 that further damaged his teeth and other parts of his mouth. *Id.* at 7 (¶¶ 2-3). Following this

seizure he was given what he characterizes as a perfunctory MRI at St. Vincent's Hospital without examination of his dental problems, and was returned to BCC where he was seen by numerous doctors, including defendant doctors Allen Kaye and Susannah Tung, as well as defendant social worker Christine Gaits-Galcone. He was not seen by a dentist despite multiple requests to see one. *Id*. at 7-8 (¶¶ 4-6).

Cooper was transferred to Cheshire Correctional Institution ("Cheshire CI") in January 2019, where he renewed his request for dental care, both in writing and "plead[ing] with mental health clinicians [defendant] Krystal Jackson and [non-defendant] Michael Sussal." *Id*. at 8 (¶¶ 7-8). He was ultimately seen by a dentist, defendant Bruce Lichtenstein, in April 2019. *Id*. at 9 (¶ 9). Lichtenstein was able to partially address Cooper's dental problems, but explained that full treatment for Cooper's problems would need at least one follow-up appointment after a ten-day course of antibiotics. *Ibid*. But the follow-up never happened; although Cooper requested it, Lichtenstein claimed afterwards that the follow up was not necessary (at least not immediately necessary) because Cooper's remaining issues were "unlikely to become emergent." *Ibid*. Lichtenstein's assessment about the emergence of his dental needs, Cooper alleges, was directly contradicted by MRI scans of Cooper performed at the University of Connecticut Health Center ("UConn") that were witnessed by defendants Stephanie McClain and Jane Ventizella. *Ibid*.

Nonetheless, Cooper was not seen by Dr. Lichtenstein again for the remainder of his stay at Cheshire CI. *Id*. at 9 (¶ 10). Cooper was transferred back to BCC a month later. *Ibid*. He wrote to prison officials again, seeking the follow up treatment he did not receive at Cheshire CI. *Id*. at 10 (¶ 11). He was seen by dentist and defendant George Bozzi about a month later, *id*. at 10 (¶ 12), but Dr. Bozzi indicated at that meeting that he would not provide Cooper with the necessary dental care because he was understaffed, *ibid*., and because the DOC did not permit him to

provide Cooper with certain dental treatments, *ibid*. Dr. Bozzi concluded the exam with no further action other than prescribing Cooper a week's supply of ibuprofen, *id*. at 11 (¶ 14).

Ten days later Cooper was transferred to the Carl Robinson Correctional Institution ("Robinson CI"), and once again sought dental care. *Id*. at 11 (¶ 15). He was seen by dentist and defendant Bui in July 2019, who performed x-rays and other examinations but ultimately opined that the full battery of dental work needed would not be available until after Cooper was released, which was anticipated to occur as early as October of that year. *Id*. at 11 (¶ 16). Dr. Bui's examination revealed that Cooper's dental condition had worsened to the point that he would almost certainly need to extract his remaining anchor teeth, which would prevent him from using a partial plate—a consequence, Cooper alleges, of the long-term neglect of his dental problems while in DOC custody. *Id*. at 12 (¶ 17).

Cooper ultimately had at least one tooth removed at UConn in October 2019, but he remained in pain and needed still more dental work. *Id*. at 12, 15 (¶¶ 20-21). In a change of address notice filed on January 20, 2020, Cooper indicated that he was to be released from DOC custody on January 24, 2020, and "will be visiting a dentist immediately" either in Connecticut or Vermont "as a great deal of the incomplete [dental] work has become horrible." Doc. #15.

Alongside Cooper's claims respecting deprivation of dental care, he alleges that certain defendants subjected him to extreme emotional trauma by reason of their "failure to appropriately treat, do background checks into medications, and protect [him] from the harms that [came] from their intentional ignorance[]." Doc. #1 at 15 (¶ 22). Specifically, Cooper alleges that in May or June of 2019, defendant Frank Mastri, from whom he had previously received psychological counseling, slammed a door in his face and refused to provide mental health care. *Id*. at 10 (¶ 11). In an "intermediary declaration" interleaved into the complaint, he further

alleges that he was falsely accused by unnamed other inmates of fighting his cellmate, which caused unnamed guards to humiliate him by handcuffing him in front of other prisoners before assigning him to a cell with another inmate "notorious for assaultive behavior." *Id*. at 13.

In November 2019, Cooper filed this action seeking damages, declaratory relief, and injunctive relief "ordering defendants to pay for a complete dental exam" with accompanying treatment, as well as to "cover the costs of 60 months of private mental health treatments" including therapy, medication, and 60 months' rent in "reasonably priced private housing." Doc. #1 at 16-17. This is the third lawsuit Cooper has filed on this topic, but the previous two lawsuits appear to have been voluntarily withdrawn and dismissed without prejudice.[1]

The present lawsuit names DOC Commissioner Rollin Cook and Health Services Administrator Ron LaBonte in their official capacities for injunctive relief, and the following defendants in their personal capacities for money damages:

- George Bozzi, dentist at BCC;
- Bruce Lichtenstein, dentist at Cheshire CI;
- Dr. Bui, dentist at Robinson CI;
- Stephanie McClain, nurse at Cheshire CI;
- Jane Ventizella, nurse at Cheshire CI;
- Allen Kaye, doctor at Bridgeport CI;
- Christine Gaits-Falcone, social worker at BCC;
- Krystal Jackson, counselor at Cheshire CI;
- Frank Mastri, counselor BCC;
- Susanna Tung, doctor at BCC;
- John or Jane Doe, intake nurse, third shift, at BCC.

Construing the papers liberally, I understand the complaint to set forth a claim under 42 U.S.C. § 1983 alleging that the defendants were deliberately indifferent to Cooper's objectively

---

[1] *See Cooper v. Doe et al*, 3:19-cv-01184-AWT (D. Conn.) (first lawsuit, filed August 1, 2019, withdrawn October 3, 2019); *Cooper v. LaBonte et al*, 3:19-cv-01202-AWT (D. Conn.) (second lawsuit, filed August 5, 2019, withdrawn October 31, 2019).

4

serious medical needs in violation of the Eighth Amendment to the U.S. Constitution.[2] On January 15, 2020, approximately two months after he filed this lawsuit and nine days before he was released from prison, Cooper moved for a preliminary injunction seeking "an order stating that the defendants will pay for [Cooper's] immediate dental exams, procedures, and meds [as well as] the costs of complete restorative dental treatments." Doc. #13. Defendants have opposed the motion for a preliminary injunction. Doc. #20.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet

---

[2] Cooper states that he is also suing the defendants under 42 U.S.C. § 1985 and § 1986, but as discussed in detail in *Germano v. Cook*, 2020 WL 264763, at *7 (D. Conn. 2020), these statutes—relating to equal protection and obstruction of justice—are not implicated by the claims in Cooper's complaint. Insofar as Cooper's complaint seeks to bring claims under sections 1985 and 1986, I will dismiss them.

the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Deliberate indifference claims*

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm or to the serious medical needs of a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A deliberate indifference claim under the Eighth Amendment has two requirements. First, the prisoner must allege that he was subject to an objectively serious risk of harm or serious medical need, as distinct from what a reasonable person would understand to be a minor risk of harm or minor medical need. Second, the prisoner must allege that a defendant prison official acted not merely carelessly or negligently but with a subjectively reckless state of mind akin to criminal recklessness (*i.e.*, reflecting actual awareness of a substantial risk that serious harm to the prisoner would result). *See, e.g.*, *Spavone v. N.Y. State Dept. of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).[3]

Dental conditions resulting in extreme pain, as pled here, suffice to meet the first requirement. *See Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000). I will evaluate the second requirement in light of the particular allegations as to each defendant.

---

[3] I assume for purposes of this ruling that Cooper was a sentenced prisoner during the events in question. If he was not a sentenced prisoner, then his claims for deliberate indifference would be evaluated under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Piniero*, 849 F.3d 17, 29 (2d Cir. 2017). Application of that less demanding standard would not make a difference to my ruling in this case.

*Dental conditions—Drs. Bozzi, Lichtenstein, and Bui*

The complaint alleges that Dr. Lichtenstein provided Cooper with a variety of dental treatments, but did not perform a follow-up treatment within the approximately 20 days between the 10-day antibiotic course Cooper had to take before the follow-up was possible and Cooper's transfer, opining that the follow up within that period was unnecessary. Doc. #1 at 9 (¶ 9). At most, this allegation might state a claim for malpractice or negligence; it is a far cry from alleging that Dr. Lichtenstein acted with a state of mind akin to criminal recklessness. I will accordingly dismiss the complaint for failure to state a deliberate indifference claim against Dr. Lichtenstein.

The same conclusion follows for Dr. Bui. The complaint alleges that Dr. Bui performed a comprehensive examination of Cooper's teeth, and refused to provide certain dental work on Cooper only because different dental work—that Dr. Bui apparently could not do—had to happen first, and by the time that work was complete Cooper would be released. Doc. #1 at 11-12 (¶¶ 16-20). That subsequent work appears to have been a tooth pulling, which was indeed done at UConn about a month before this lawsuit was filed. *Id*. at 12 (¶ 20). Far from pleading that Dr. Bui was criminally reckless with respect to Cooper's dental needs, the complaint does not plead Dr. Bui was even negligent. I will accordingly dismiss the complaint as pled against Dr. Bui.

I will, however, allow the complaint to proceed against Dr. Bozzi. The complaint pleads that Dr. Bozzi performed only a perfunctory examination of Cooper's teeth and rejected the need for any dental treatment despite the need for such treatment being "obvious" and visible "with the naked eye." *Id*. at 11 (¶ 13). The complaint also alleges that Dr. Bozzi lied about what DOC permitted in-house dentists to do, *id*. at 10 (¶ 12), and that before even examining Cooper he

declared that Cooper would not receive any treatment from him, apparently because he was short-staffed, *ibid*. These allegations are sufficient to state a claim for deliberate indifference. *See Chance v. Armstrong*, 143 F.3d 698, 704 (2d Cir. 1998) (subjective prong for deliberate indifference claim against dentists in light of allegation that "recommended extraction [was] not on the basis of their medical views, but because of monetary incentives"). I will allow the complaint to proceed against Dr. Bozzi in his personal capacity.

### *Dental conditions—remaining defendants*

In addition to the three dentists, Cooper has sued a large number of other medical providers within the DOC. But the complaint does not describe in any detail how they were objectively indifferent to Cooper's medical needs other than by receiving his demands for a dental examination; the complaint does not even state that these defendants failed to act on the demands they received (and Cooper ultimately received dental care even if only after an extended period of time). Specifically, defendant John Doe intake nurse is described as telling Cooper "to write dental," Doc. #1 at 7 (¶ 1); defendants Kaye, Gaits-Falcorie, and Tung are described as "seeing" Cooper, *id*. at 8 (¶ 6); defendants McClain and Ventizella are described as "directly involved" and "privy to" Cooper's ultimate visit to the University of Connecticut medical system for dental surgery, *id*. at 9 (¶ 9); and defendant Jackson, a mental health therapist, is described as someone Cooper "pleaded with" without further details, *id*. at 8 (¶ 8).

The complaint makes no allegations that any of the defendants had the ability to provide Cooper with dental care, or even procure dental care for him. It does not even say that they failed to advocate for him to get the dental care that he ultimately received. Indeed, the complaint at no point identifies anyone who actually had the power to get Cooper in to see a dentist sooner and failed to exercise that power. These conclusory allegations fall far short of plausibly alleging

8

deliberate indifference to objectively serious medical needs. I will accordingly dismiss Cooper's claims against defendants Kaye, Gaits-Falcorie, Tung, McClain, Ventizella, and Jackson.

### *Mental health conditions*

Cooper states that he suffers from unspecified mental health conditions that led to several suicide attempts while he was in custody. Doc. #1 at 6. I will assume that his mental conditions are objectively serious. *See, e.g.*, *Currytto v. Furey*, 2019 WL 1921856, at *5 (D. Conn. 2019). Slamming a door in a prisoner's face is not objectively serious enough misconduct to violate the Eighth Amendment, and Cooper does not plausibly allege that it was done with subjective recklessness.

Although Cooper may well have been justifiably upset when defendant Mastri refused to see him for further treatment, "the Constitution does not entitle a prisoner to a mental health counselor of his choice," *Germano v. Cook*, 2020 WL 264763, at *10 (D. Conn. 2020), and there is no allegation in the complaint that Cooper was categorically denied mental health treatment. Insofar as the complaint conclusorily alleges that certain defendants "failed to protect [him] from the horrors of seizure, isolation/abandonment, and the return of the helplessness and hopelessness that no human [should, or possibly can] overcome alone," Doc. #1 at 17-18, his complaint does not set forth facts substantiating this claim.

Accordingly, I will dismiss Cooper's deliberate indifference to mental health needs claims against all defendants. Because Cooper makes no other allegations against defendant Mastri, I will dismiss defendant Mastri from the case.

### *Motion for preliminary injunction and injunctive relief*

The only injunctive relief Cooper seeks—either in his complaint or in his motion for a preliminary injunction—is the payment of medical expenses for various future dental surgeries,

9

payment for a suite of mental health treatments, and payment of his rent for five years. As regards Cooper's motion for a preliminary injunction, because Cooper is no longer in DOC custody, any genuine motion for preliminary injunctive relief is moot. *See Khalil v. Laird*, 353 F. App'x 620 (2d Cir. 2009). I will accordingly dismiss Cooper's motion for preliminary injunction, Doc. #13, as moot.

As for Cooper's request for injunctive relief in his complaint proper, his demand for payment of various medical expenses and rent is essentially a demand for damages dressed up as a demand for injunctive relief, *see Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 660-61 (2016) (payment of medical expenses sounded in law, not equity). Because they do nothing more than restate Cooper's damages claims, I will dismiss them as duplicative, and accordingly will dismiss all official capacity claims and all claims against the two official capacity defendants, DOC Commissioner Rollin Cook and Health Services Administrator Ron LaBonte.

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

1. Cooper's Eighth Amendment claims for deliberate indifference to serious medical needs may proceed with respect to his dental conditions against Dr. George Bozzi in his personal capacity only.

2. All other claims and defendants to this action are DISMISSED.

3. Cooper's motion for a preliminary injunction, Doc. #13, is DENIED AS MOOT.

4. The Clerk shall verify the current work address for Dr. Bozzi with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to Dr. Bozzi at the confirmed addresses **within twenty-one (21) days of this Order**, and report to the Court on the status of the waiver request by not later than **the thirty-fifth (35) day after mailing**. If Dr. Bozzi fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

5. Dr. Bozzi shall file his response to the complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him.

6. The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

7. The discovery deadline is extended to **six months (180 days) from the date of this Order**. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this order. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

8. The deadline for summary judgment motions is extended to **seven months (210 days) from the date of this Order**.

9. Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e. a motion to dismiss or a motion for summary judgment) **within twenty-one (21) days of the date the motion was filed**. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

10. If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he **MUST** notify the court. Failure to do so may result in the dismissal of the case. Plaintiff must give notice of a new address even if he is reincarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify defendants or defense counsel of his new address.

It is so ordered.

Dated at New Haven this 21st day of April 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge